**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTOPHER SCOTT, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS** |
| CEREVEL THERAPEUTICS HOLDINGS, INC., N. ANTHONY COLES, RON RENAUD, MARIJN DEKKERS, DOUG GIORDANO, CHRISTOPHER GORDON, ADAM KOPPEL, NORBERT RIEDEL, GABRIELLE SULZBERGER, RUTH MCKERNAN, DEVAL PATRICK, DEBORAH BARON, and SUNEET VARMA, | ) **OF THE FEDERAL SECURITIES LAWS** ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Christopher Scott ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Cerevel Therapeutics Holdings, Inc. ("Cerevel" or the "Company") and the members of Cerevel's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Cerevel to AbbVie Inc. ("AbbVie") (the "Proposed Transaction").

2. On December 6, 2023, Cerevel, AbbVie, AbbVie's wholly owned subsidiary Symphony Harlan LLC ("Intermediate Holdco"), and Intermediate Holdco's wholly owned subsidiary Symphony Harlan Merger Sub Inc. ("Merger Sub") entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, AbbVie will acquire Cerevel for $45.00 in cash per share of Cerevel common stock.

3. On January 18, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Cerevel stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) Cerevel's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Centerview Partners LLC ("Centerview"); and (iii) potential conflicts of interest faced by Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Cerevel stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Cerevel stockholders to vote on the Proposed Transaction is currently scheduled for February 16, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Cerevel's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Cerevel common stock.

10. Defendant Cerevel is a Delaware corporation, with its principal executive offices located at 222 Jacobs Street, Suite 200, Cambridge, Massachusetts 02141. Cerevel's shares trade on the Nasdaq Capital Market under the ticker symbol "CERE."

11. Defendant N. Anthony Coles has been Chairperson of the Board and a director of the Company at all relevant times and previously served as the Company's Chief Executive Officer.

12. Defendant Ron Renaud has been President, Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Marijn Dekkers has been a director of the Company at all relevant times.

14. Defendant Doug Giordano has been a director of the Company at all relevant times.

15. Defendant Christopher Gordon has been a director of the Company at all relevant times.

16. Defendant Adam Koppel has been a director of the Company at all relevant times.

17. Defendant Norbert Riedel has been a director of the Company at all relevant times.

18. Defendant Gabrielle Sulzberger has been a director of the Company at all relevant times.

19. Defendant Ruth McKernan has been a director of the Company at all relevant times.

20. Defendant Deval Patrick has been a director of the Company at all relevant times.

21. Defendant Deborah Baron has been a director of the Company at all relevant times.

22. Defendant Suneet Varma has been a director of the Company at all relevant times.

23. Defendants identified in paragraphs 11-22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24. Cerevel is a clinical-stage biopharmaceutical company developing various therapies for neuroscience diseases in the United States. The Company's pipeline includes: (i) Emraclidine, a positive allosteric modulator ("PAM") that is in Phase 1b clinical trials for the treatment of schizophrenia; (ii) Darigabat, a PAM, which is in a Phase 2 trial in patients with drug-resistant focal onset seizures in epilepsy or focal epilepsy and a Phase 2 trial to treat panic symptoms model; (iii) Tavapadon, a selective dopamine D1/D5 partial agonist that is in a Phase 3 clinical trial for the treatment of early- and late-stage Parkinson's disease; and (iv) CVL-871, a

4

selective dopamine D1/D5 partial agonist, which is in Phase 2a clinical trial to treat dementia-related apathy, among other programs.

**The Proposed Transaction**

25.     On December 6, 2023, Cerevel announced the Proposed Transaction, stating, in relevant part:

> NORTH CHICAGO, Ill. and CAMBRIDGE, Mass., Dec. 6, 2023 /PRNewswire/ -- AbbVie Inc. (NYSE: ABBV) and Cerevel Therapeutics (NASDAQ: CERE) today announced a definitive agreement under which AbbVie will acquire Cerevel Therapeutics and its robust neuroscience pipeline of multiple clinical-stage and preclinical candidates with potential across several diseases including schizophrenia, Parkinson's disease (PD), and mood disorders. The acquisition complements AbbVie's neuroscience portfolio, adding a wide range of potentially best-in-class assets that may transform standards of care across psychiatric and neurological disorders where significant unmet needs remain for patients.
>
> Under the terms of the transaction, AbbVie will acquire all outstanding shares of Cerevel for $45.00 per share in cash. The transaction values Cerevel at a total equity value of approximately $8.7 billion. The boards of directors of both companies have approved the transaction. This transaction is expected to close in the middle of 2024, subject to Cerevel shareholder approval, regulatory approvals, and other customary closing conditions.
>
> "Our existing neuroscience portfolio and our combined pipeline with Cerevel represents a significant growth opportunity well into the next decade," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "AbbVie will leverage its deep commercial capabilities, international infrastructure, and regulatory and clinical expertise to deliver substantial shareholder value with multibillion-dollar sales potential across Cerevel's portfolio of assets."
>
> "Cerevel has always been committed to transforming what is possible in neuroscience. With AbbVie's long-standing expertise in developing and commercializing medicines on a global scale, Cerevel's novel therapies will be well positioned to reach more people living with neuroscience diseases," said Ron Renaud, president and chief executive officer, Cerevel Therapeutics. "The talented, passionate, and dedicated Cerevel team has made great progress over the past five years in developing our innovative suite of potential medicines, and we are pleased that AbbVie has recognized the tremendous potential of our pipeline. This acquisition reinforces the renaissance we are seeing in neuroscience, and we are proud to be at the forefront."

Cerevel's late-stage asset emraclidine, a positive allosteric modulator (PAM) of the muscarinic M4 receptor, is a potential best-in-class, next-generation antipsychotic that may be effective in treating schizophrenia patients. Schizophrenia impacts more than five million people in the G7 (U.S., France, Germany, Italy, Spain, United Kingdom, and Japan) and a significant opportunity for treatment innovation remains for new and better tolerated therapies. In a Phase 1b study, emraclidine has shown promising efficacy and safety in schizophrenia and is currently completing two Phase 2 trials that were designed to be registration enabling. In addition, emraclidine has potential in dementia-related psychosis in Alzheimer's disease and PD. Emraclidine is currently in a Phase 1 study in elderly healthy volunteers in support of a potential Alzheimer's disease psychosis program.

In addition to emraclidine, Cerevel has multiple assets advancing in clinical development with best-in-class potential that are complementary to AbbVie's priority areas within neuroscience. Tavapadon, a first-in-class dopamine D1/D5 selective partial agonist for the management of PD, is currently in Phase 3 studies and has potential for both monotherapy and adjunctive treatment. Tavapadon's efficacy and safety-tolerability profile could enable its utility in early PD, becoming a near-term complementary asset to AbbVie's existing symptomatic therapies for advanced PD. CVL-354, currently in Phase 1, is a potential best-in-class kappa opioid receptor (KOR) antagonist that has the potential to provide significantly improved efficacy and tolerability compared to existing treatments for major depressive disorder (MDD). Darigabat, currently in Phase 2, is an alpha 2/3/5 selective GABAA receptor PAM for treatment-resistant epilepsy and panic disorder.

**Transaction Terms**
AbbVie will acquire all outstanding Cerevel common stock for $45.00 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by Cerevel shareholders. The proposed transaction is expected to be accretive to adjusted diluted earnings per share (EPS) beginning in 2030.

**The Materially Incomplete and Misleading Proxy Statement**

26.     On January 18, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Cerevel stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Cerevel's financial projections; (ii) the financial analyses that support the fairness

6

opinion provided by the Company's financial advisor Centerview; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning Cerevel's Financial Projections*

27. The Proxy Statement fails to disclose material information concerning Cerevel's financial projections.

28. For example, for the Company's risk-adjusted financial projections, the Proxy Statement fails to disclose all line items underlying the Company's: (i) EBIT; and (ii) Unlevered Free Cash Flow.

29. In addition, the Proxy Statement fails to disclose a summary of the Company's non-risk-adjusted projections or a quantification of the risk-adjustments. The Proxy Statement similarly fails to disclose a quantification of the assumptions underlying the Company's projections, including with respect to:

> the probability of success of clinical development and FDA approval of its product candidates and the timing of clinical trials, regulatory approval and commercial launch of these products; market demand for, and pricing of, its products; market size; market share; competition; reimbursement; distribution; estimated costs and expenses; contractual relationships, including upfront, royalty and milestone payments from assumed potential ex-U.S. partnerships; effective tax rate; utilization of net operating losses[.]

Proxy Statement at 63.

*Material Misrepresentations and/or Omissions Concerning Centerview's Financial Analyses*

30. The Proxy Statement fails to disclose material information concerning Centerview's financial analyses.

31. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) the tax savings from

usage of Cerevel's estimated federal net operating losses and Cerevel's estimated future losses; (iv) Cerevel's estimated net cash balance of as of December 31, 2023; (v) the impact of assumed equity raises; and (vi) Cerevel's total diluted shares outstanding.

32. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

33. With respect to Centerview's *Precedent Premium Paid Analysis*, the Proxy Statement fails to disclose: (i) the identities of the transactions analyzed; and (ii) the individual premia observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

34. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

35. For example, the Proxy Statement fails to disclose whether any members of Cerevel management have secured positions, or are anticipated to secure positions, with the combined company. Similarly, the Proxy Statement fails to disclose whether any of AbbVie's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Cerevel executives and AbbVie.

36. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Centerview Partners LLC," "Interests of the Directors and Executive Officers of Cerevel in the Merger" and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior

to the stockholder vote, Plaintiff and the other stockholders of Cerevel will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cerevel**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Cerevel is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Cerevel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cerevel and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cerevel, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 25, 2024

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

12